## COMMISSIONERS OF WILKES COUNTY v. ESLEY STALEY.

*Bankruptcy—Fiduciary Debt—Novation.*

Where the defendant, being indebted to a county for public moneys collected by himself as sheriff, executed his note to the county commissioners for the amount due, and took from them a receipt in full, and after the note was reduced to judgment received his discharge in bankruptcy ; *It was held*, upon a motion by plaintiffs for leave to issue execution upon the judgment (which had become dormant) that the new security was not a " debt created by his defalcation as a public officer," and the motion was refused.

MOTION for leave to issue Execution heard on appeal at Fall Term, 1879, of WILKES Superior Court, before *Gilmer, J.*

The motion was granted and the defendant appealed.

*Mr. L. L. Witherspoon,* for plaintiffs.
*Messrs. A. M. Lewis* and *B. B. Lewis,* for defendant.

SMITH, C. J. At fall term, 1871, of the superior court of Wilkes, the plaintiffs recovered judgment against the defendant on his sealed note executed to them ; and the judgment becoming dormant, after notice and on affidavit that the debt originated in an official defalcation and was unpaid, on January 6th, 1879, the plaintiffs moved before the clerk for leave to issue execution. The defendant resisted the motion, and pleaded and produced his discharge in bankruptcy, obtained since the rendition of the judgment, as a defence. The clerk granted leave and the defendant appealed. The cause was remanded by the judge, the parties allowed to file other pleadings, and the clerk directed to take testimony and find and report the facts. In accordance with the order, the clerk made due return and finds

the facts, so far as it is material to present the point in controversy, as follows :

The defendant filled the office of sheriff of Wilkes county for the four years from 1855, to 1858 inclusive, and in his settlement with the county commissioners in January, 1869, was found to be indebted for public moneys collected and unaccounted for, in the sum of three hundred and fifty dollars reduced by county claims in his hands to $282.07, and for this residue he executed, January 22, 1869, the note sued on. At the same time the commissioners gave him an acknowledgment in these words: "Received January 22, 1869, of Esley Staley, three hundred and fifty dollars, which sum is in full of all his liabilities as late sheriff of the county of Wilkes, for county revenue for the use of the county, and fines and tax fees levied in the county and superior courts for the use of the county of Wilkes.

(Signed)      B. B. BRYAN,<br/>Chm'n of Co. Com'rs."

The defendant has been adjudicated a bankrupt and obtained his discharge on September 25, 1873, which he exhibits and relies on in bar of the present proceeding to enforce the judgment. The debt was proved in bankruptcy, but nothing has been paid thereon. On hearing the motion, His Honor, being of opinion that the debt was created by the defendant's "defalcation as a public officer," and was not discharged, affirmed the order of the clerk, and remanded the cause with direction to issue the execution. From this ruling the appeal is taken,

And brings up for our determination the question, whether a debt thus contracted, and not for a breach of official duty, is protected from the operation of the discharge, within the meaning of the bankrupt act. Rev. Stat. U. S., § 5117. The section seclares that "no debt created by the fraud or embezzlement of the bankrupt, *or by his defalcation as a public officer*, or while acting in a fiduciary character,

shall be discharged by proceedings in bankruptcy; but the debt may be proved, and the dividend thereon shall be a payment on account of such debt."

There can be no question that the liability incurred by the defendant on his official bond, for his failure to account for and pay over the public moneys in his hands, is for a defalcation contemplated by the statute, and if this were a proceeding to enforce the obligation, the debtor would not be protected by his discharge. But this is not the same debt, though substituted for it, and exists only by force of the covenant to pay the sum specified in the note. This new liability is not incurred by any default of the defendant in his office, but arises solely out of his covenant obligation and its breach. He promised to pay and failed to pay a sum measuring his default, and from this springs the personal liability which it is the object of the original action and the present motion to enforce. Whether the official bond remains in force, or its obligation is extinguished, by the novation of another and distinct security, is a question that does not arise, since the action rests alone upon the latter obligation, and this arises solely out of a subsequent contract. The distinction is obvious, and it is supported by two adjudications to which reference will be made.

In *Manufacturing Co* v. *Barnes*, 49 Maine, 312, the defendant, as executor of one Josiah M. Barnes, contracted with the plaintiff, a creditor of the testator's estate, to hold assets for the satisfaction of the debt, and having misapplied them, was sued, and set up his discharge in bankruptcy in bar. The plaintiff insisted that the defendant holding the funds in trust for payment of debts, his obligation was fiduciary and not affected by the discharge. The court say: "In making the agreement he (the defendant) was acting outside of his character as executor, and he was not acting in a fiduciary character as respects the plaintiff."

In *Coleman* v. *Davies*, 45 Ga., 489, decided in 1872, the

defendant became indebted, as guardian, to Carrie Coleman and gave his note therefor to her trustee, the plaintiff. The action was upon the note with a count upon the defendant's statement of the indebtedness for which the note was given. The defendant pleaded his discharge in bankruptcy and the court say : " The sole question necessary to be considered in this case, is, whether under the facts the note given by Davies to Coleman was a novation of the original debt, and destroyed its fiduciary character so as to take it out of the operation of the 33rd section of the bankrupt act of March 2, 1867, and allow the discharge in bankruptcy of the defendant to relieve him from the debt. We think that sections 2811 and 2827 of the code, under the facts, make the acceptance of the note a novation and *destroy the fiduciary character of the debt.*"

This is an adjudication upon the very point before us, that a new security given for a fiduciary obligation is not itself a fiduciary obligation, exempt from the operation of the discharge, and such in our opinion is the law. It must be declared that there is error in the ruling of the judge, and the judgment is reversed, and judgment must be entered for the defendant.

Error.                                        Reversed.