M. ELLIOTT and others v. A. HIGGINS, Adm'r.

*Agent and Principal—Re-issue of Execution—Administrator— Bankruptcy.*

1. When judgment was obtained, in 1861, in an action brought by one in his own name as agent and attorney for certain parties in Indiana and Missouri (to whom the fund belonged), and in 1863 the same was collected by the sheriff under execution and satisfaction of the judgment endorsed by him on the execution, a portion of the money paid to the nominal plaintiff and the remainder sequestered by the Confederate authorities : *It was held*, on a motion by the non-resident parties in in_ terest to re-issue execution, that the judgment was satisfied and that the motion could not be granted.

2. Where an administrator, in settlement with the distributees of the estate, gives his individual note for the balance due, such note is not "a debt created while acting in any fiduciary capacity" within the operation of the U. S. Revised Statutes, § 5117, and the collection of a judgment upon it is barred by a discharge in bankruptcy thereafter obtained.

(*Blackwell* v. *Willard*, 65 N. C., 555; *Justice* v. *Hamilton*, 67 N. C., 111; *Com'rs* v. *Staley*, 82 N. C., 395, cited and approved.)

MOTION to issue Execution heard at Spring Term, 1880, of McDOWELL Superior Court, before *Gilmer, J.*

The motion was made before the clerk who ordered execution to issue, and upon appeal to the judge of the superior court the judgment of the clerk was affirmed, and the defendant appealed to this court.

*Mr. W. H. Malone,* for plaintiff.
*Mr. G. N. Folk,* for defendant.

SMITH, C. J. The defendant, as executor of Nimrod Elliott, having funds in his hands upon a settlement of his administration account to which the other plaintiffs were entitled, on the 16th day of February, 1861, executed and

delivered to their agent, Elkanah Elliott, his due bill or note in the following words :

I, A. Higgins, am this day due the heirs of Wm. Ballew and McCainey Elliott three hundred and forty-eight dollars 32 cents on the estate of Nimrod Elliott dec'd, to be paid hereafter. Feb. 16th, 1861.

(Signed.) A. HIGGINS.

The plaintiffs owning the fund were residents of Indiana and Missouri, and the intestate Elkanah, retaining the note on their behalf, on April 30th, 1861, brought an action thereon in his own name, describing himself as attorney for them and reciting their names, and at spring term, 1861, recovered judgment against the defendant for the sum specified and due.

On February 3d, 1863, execution issued to the sheriff, returnable to fall term, on which he collected the money, and endorsed thereon : " Received satisfaction in full of this *fi. fa.* for four hundred and eighteen dollars and 70 cents. Retain my fee and commissions, $10.94 : pay into office $107.82.

(Signed.) J. H. DUNCAN, sh'ff."

A portion of the money was afterwards received by the intestate, and the residue passed into the hands of a receiver appointed under the sequestration act of the Confederate Congress.

In 1872, the defendant, under regular proceedings in the proper district court of the United States, was declared a bankrupt, and the year following obtained his discharge.]

The present motion is for leave to issue execution, to which objection is made upon the ground that,

1. The debt has been paid and the judgment satisfied by the sheriff's return, and

2. The defendant is discharged by the decree in bankruptcy.

The hostile relations growing out of the essayed revolutionary movement for the withdrawal of this and other

states associated in the effort, from the United States and their common government, analagous to, and by the act of Congress of July, 1861, put on the same footing, as those subsisting between independent belligerent states by the law of nations, put an end to further business intercourse between the citizens of the respective parts, and revoked all agencies created or authority previously conferred upon the one by the other, as is declared in *Blackwell* v. *Willard*, 65 N. C., 555, and *Justice* v. *Hamilton*, 67 N. C., 111. The rule is not without exception, and Mr. Justice BRADLEY, delivering the opinion of the supreme court of the United States in *Ins. Co.* v. *Davis*, 95 U. S., 425, in an elaborate discussion of the question, and after quoting a paragraph from Emerigon that " if a foreigner is forced to depart from one country, in consequence of a declaration of war with his own, he may leave a power of attorney with a friend to collect his debts, and even to sue for them," uses this language : " Perhaps it may be assumed that an agent *ante bellum*, who continues to act as such during the war, in the receipt of money or property in behalf of his principal, when it is the manifest interest of the latter that he should do so, as in the collection of rents and other debts, the assent of the principal will be presumed unless the contrary is shown ; but that where it is against his interest, or would impose upon him some new obligation or burden, his assent will not be presumed, but must be proved, either by his subsequent ratification, or in some other manner."

But the present case is not within the operation of the principle thus announced with its qualifications. The note is sued on in the name of the agent, as *trustee for the others*, and there is no legal impediment in the way of its prosecution to final judgment and ultimate satisfaction. As the law then was, he alone was, at law, the owner of the judgment, with full right to control and dispose of it and its fruits.

Again, the payment was not voluntary but coerced out of the defendant by process which he could not resist, and it would be unjust when the plaintiff of record has enforced satisfaction, that the defendant should be compelled to pay the same debt a second time. The parties beneficially interested recognize the agency, and seek to take advantage of what was done by their agent by asking for an execution pursuant to the judgment. We are not disposed to entertain, favorably, an application based solely upon the recovery in the name of their trustee, and which proposes to repudiate his subsequent agency, in suing out final process and compelling payment of the debt. In our opinion they are, and ought to be, equally bound by all his acts in their behalf, done in good faith, and intended for their benefit.

II. It is contended that the discharge in bankruptcy is ineffectual against this, as a fiduciary obligation. The bankrupt act exempts from a discharge any " debt created by the fraud or embezzlement of the bankrupt, or by his defalcation as a public officer, or *while acting in any fiduciary character.*" Rev. Stat. U. S., § 5117.

We have already decided, in *Commissioners of Wilkes* v. *Staley*, 82 N. C., 395, that a bond given by a defaulting public officer for the amount of his indebtedness, and reduced to judgment, was not a debt created by his defalcation but by his own voluntary contract, and was barred by the discharge. The opinion is supported by the cases therein referred to, and rests upon sound and satisfactory reasoning. The decision was controverted with much earnestness of manner in the argument for the plaintiffs, but no cases were cited in opposition, and our conviction of its correctness remains unshaken. We are more desirous of being right than consistent, and would not hesitate a moment to change our rulings whenever convinced of their erroneousness.

It will be difficult in principle to distinguish that case from the present. The individual obligation of the defend-

ant, existing only by force of his own voluntary contract, is substituted for one resting upon assets with which he is chargeable as trustee, and his own personal estate thus becomes liable to its payment. By virtue of the judgment, the right to the money due on it vests in a trustee. This does not seem to be, in the words of the statute, a debt created "while acting in a fiduciary character," although the consideration of the contract may be such pre-existent liability.

But it is unnecessary to enquire whether the note is a novation or a cumulative security merely, and within the scope of the decision in *Commissioners of Wilkes* v. *Staley*, to which we fully adhere, since our opinion upon the other matter of defence determines the controversy.

There is error and the judgment below is reversed and a new trial granted. Let this be certified.

Error.                                             Reversed.